**Mary Alice HILL, Plaintiff,**

v.

**John D. NETTLETON, C. O. Neidt, Daniel M. Ogden, Alvin Pettine, Irmel Fagan, and Colorado State University, Defendants.**

**Civ. A. No. 75 M 908.**

United States District Court,
D. Colorado.

Aug. 30, 1978.

---

Judith Ward Mattox, Colorado Springs, Colo., atty., for plaintiff.

Paul D. Cooper and Carol M. Welch, Yegge, Hall & Evans, Denver, Colo., attys., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

After three academic years of service on the faculty of the Physical Education Department at Colorado State University, Mary Alice Hill was not given a renewal contract for the year 1975–76. Upon compliance with the administrative claim requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, Ms. Hill brought this action claiming that the non-renewal decision constituted sex discrimination in employment. She also sued the individual defendants alleging that

they caused the nonrenewal of her contract in retaliation and reprisal for the exercise of her constitutionally protected freedom of speech as an aggressive advocate of the expansion of a program of intercollegiate athletics for women at CSU. That claim under 42 U.S.C. § 1983 was tried to a jury who found for the plaintiff, awarding her $50,000.00 in compensatory damages and $15,000.00 punitive damages, allocated among the individual defendants. Upon the evidence presented at that jury trial and that received at a subsequent hearing, this court now finds and concludes that the plaintiff is also entitled to relief as the victim of unlawful discrimination because of her sex.

In the spring of 1972, Dr. John Nettleton was the Chairman of the Physical Education Department at CSU. That department was and is an academic department in the College of Humanities and Social Sciences. At all times relevant to the subject matter of this case, CSU had a Department of Athletics under the administration of a full-time athletic director, and its functions were limited to the support of intercollegiate competition by male students in a variety of sports, including football, basketball, track and field, gymnastics, and others. The Athletic Department was and is separate and apart from all of the academic colleges of the university. The athletic director was, at all relevant times, a man and all of the coaches in the Athletic Department were male. Most of those coaches had "dual appointments" which meant that their salaries were divided between the Athletic Department and the Physical Education Department budgets.

There was a very limited athletic program for female students at CSU in 1972. Both intercollegiate competition and intramural sports were managed by a committee of faculty members and students organized as the "Women's Recreation Association."

In response to an increasing student interest in expanding the women's athletic program, Dr. Nettleton sought out the plaintiff as an experienced track and field competitor and coach. They first met and talked at a national physical education convention in Houston in the spring of 1972. At that time, Ms. Hill was an assistant coach at Texas Women's University, working toward a doctorate degree. The initial discussion was very general in terms but definite in the direction of an intention to develop a strong program for women.

After a visit to the CSU campus and further discussions with faculty persons, Mary Hill expressed her interest in a coaching opportunity and returned to Texas to await an offer. A few days later, Dr. Nettleton called and spoke of the need for graduate student supervision, suggesting that it be included in the responsibilities of the position under discussion. Ms. Hill's response to that suggestion was negative and in a subsequent telephone conversation Dr. Nettleton offered a combination teaching and coaching position to the plaintiff. She again came to the CSU campus in May, 1972 and signed a contract for the following academic year.

During that year, 1972–1973, Ms. Hill was paid $10,500.00 for which she served as the administrator of the women's intramural and intercollegiate athletic programs, coached track and field, and taught service classes in the Department of Physical Education. Dr. Nettleton took sabbatical leave shortly after hiring Ms. Hill and he was not on campus when she began her duties in the fall. One apparent result was a failure to document adequately the expectation for her position and another was that she was classified as an instructor rather than the agreed position of assistant professor. The latter error was corrected by Dr. Nettleton when he returned in January, 1973 and recommended the advancement in rank, which ultimately became effective July 1, 1973. In that recommendation, Dr. Nettleton wrote:

> The qualifications of Miss Hill for this position should be considered the terminal degree to adequately carry out the duties with the Assistant Professor rank as this is a creative performance area.

In an evaluation conference in March, 1973, Dr. Nettleton wrote this opinion of Ms. Hill's performance:

The assignment of Miss Hill was reviewed and the discussion pertained to the future development of Intramurals and Athletics for women at Colorado State University. Miss Hill's major responsibility, outside of academics, will be the continued development and direction of these two programs.

Miss Hill is a very outstanding athlete, nationally and internationally known in the area of women's track and field. The department has already received numerous letters of commendation with regard to her clinics and conference presentations at the state level.

Our students have reported that Miss Hill is an outstanding instructor, extremely interested in their progress, highly motivated, and accessible to her students. The department is most fortunate to have Miss Hill on its staff and we highly recommend that she be reappointed for the 1973–74 academic year.

During that academic year 1973–74 the plaintiff was directed to allocate her time in equal thirds among the administration of women's intercollegiate and intramural athletics, coaching the women's track and field team and service teaching in the Physical Education Department. During the fall of 1973, Mary Alice Hill was a very outspoken advocate for the advancement of women's athletics and she energized efforts to obtain additional funds for those programs. In February, 1974, Dr. Nettleton wrote a letter to the plaintiff to advise her that her contract would not be renewed for the 1974–75 academic year because of deficiencies in her performance. Among those deficiencies, the first charge was a failure to make any effort to complete the requirements for a doctorate degree. The other charges included absence from classes, failure to perform various duties related to teaching and administration and causing friction with faculty members who had dual appointments.

Mary Alice Hill challenged those charges and an *ad hoc* committee of the Faculty Improvement Committee was appointed to consider the matter. That committee made a written report on April 12, 1974, reaching the unanimous conclusion that the reasons given for not renewing Professor Hill's contract were not valid and that she should be reappointed. Specifically, the committee found no written evidence to suggest that the plaintiff had been told at the time of her employment that she must complete her doctorate to be retained on the faculty.

On May 1, 1974, the Dean of the College of Humanities and Social Sciences notified Dr. Nettleton that his decision not to reappoint Mary Alice Hill for the 1974–1975 school year was overruled. The Dean also directed the preparation of a set of specific directions to Ms. Hill for the following academic year, including making significant progress toward completion of the PhD degree. Dr. Nettleton then resigned as chairman of the Physical Education Department and Dr. Alvin Pettine became acting chairman. Dr. Pettine gave Ms. Hill a memorandum, dated May 30, 1974, setting forth conditions for her reappointment for 1974–1975. After emphasizing the growth of the graduate program he directed that she make significant progress toward her PhD by requiring the completion of 45 semester hours by no later than September 1, 1974, the submission of a dissertation proposal by September 1, 1974 and the completion of all requirements for the doctorate no later than August, 1975. Ms. Hill was also informed that those accomplishments would be a condition for consideration for reappointment for the 1975–1976 school year as to which a decision must be made by December 15, 1974. The remainder of the requirements emphasized various aspects of the teaching responsibilities within the Physical Education Department.

The plaintiff responded with a memorandum dated June 1, 1974, making both general and specific objections. Ms. Hill characterized the schedule for completion of her doctorate as impossible and she listed her commitments for coaching and teaching at various events, clinics and workshops during the coming summer.

Dr. Pettine responded with a memorandum dated June 6, 1974 in which he

changed the schedule of progress toward the PhD degree to require that six semester hours be taken in the summer session in 1974 and matriculation examinations in October, 1974. With respect to the scheduled commitments, Dr. Pettine wrote:

I must point out that you are not employed at Colorado State University during the summer months and, therefore, attendance at these activities are not required by the department or the university. We will concede that these could prove of some value to you personally, however. The list of activities do not indicate that you will, in fact, be one of the major contributors to a particular activity, but shows that you will be coaching a limited number of competitors. We cannot support your position that these functions should take priority over your obligation to work towards the completion of your PhD program.

The Department of Physical Education believes, instead, that the guidelines set forth above are reasonable and can be attained by you. In order to comply with the policy that decisions for renewal of contracts for probational faculty be made prior to June 10, 1974, serves official notice that this memorandum shall be your official notice that the Department of Physical Education will recommend that your contract not be renewed for the 1975–1976 academic year. We shall, however, continue to evaluate not only the progress of your PhD program, but also the other criteria established for probationary faculty, as previously outlined in our memorandum dated May 30, 1974. We advise you further that in order that the deadline not pass without proper action on this policy, the appropriate procedures and papers are presently being processed.

Under this clear threat of dismissal, Mary Alice Hill signed her acceptance of these conditions of reemployment.

Mary Hill did obtain course credits in the summer of 1974 but she did not take the matriculation examinations in October. On November 22, 1974, Dr. Pettine wrote to the plaintiff:

Since you did not fulfill the agreement which you signed dated June 6, 1974, which stipulated that you would take the matriculation examinations in October, 1974, I am recommending that your contract not be renewed for the 1975–1976 academic year.

Professor Hill again appealed that adverse decision through an internal disputes resolution procedure, and, by a three to two decision, a faculty hearing committee disapproved a resolution that the non-renewal was handled adequately "with respect to procedures, academic freedom and justice." The Physical Education Department appealed that decision to an outside hearing examiner who concluded that CSU had the legal right not to renew Ms. Hill for the academic year 1975–1976. The hearing examiner did not consider the sex discrimination and constitutional rights questions.

Mary Alice Hill was unemployed for the academic year 1975–1976 and although she applied to other schools, she was unable to obtain a new position until July 1, 1976. Her last salary at CSU was $11,200.00.

The role of women's athletics at CSU had become a matter of great importance by the spring of 1973. President Chamberlain had directed the development of budget proposals for a ten year budget project and a committee was formed to determine the sports in which women's teams would engage in intercollegiate competition. That project was assigned to an assistant dean in the College of Humanities and Social Services because Dr. Nettleton did not want to have any responsibility for intercollegiate athletics for women. It must be remembered that the men's intercollegiate athletic program was totally apart from the Physical Education Department.

Other persons in the Physical Education Department, including those who were assigned to evaluate the plaintiff, were also much less than enthusiastic about developing women's sports. Accordingly, Mary Alice Hill was given the very difficult task of trying to be the leader and administrator of an emerging athletic program while as-

signed to a position in an academic department which did not support her efforts or goals. No one in the Athletic Department was placed in comparable circumstances and the Athletic Department was only for males.

■ The preponderance of the evidence shows that the actions taken by those at CSU who were responsible for the plaintiff's employment reflect a discriminatory animus against the plaintiff. I agree with the finding of the jury in this case that there was retaliation against her for her attempts to advance the cause of women's intercollegiate athletic competition. It is fair to infer that some saw those efforts as a threat to the funding of the men's teams. Additionally, there is evidence of an apparent reluctance to accept the change in the sex stereotyped role of intercollegiate competition as a masculine domain. Those in authority saw Mary Alice Hill more as a symbol of her sex than as a member of the faculty and she suffered from that perception. It resulted in her being treated less favorably because of her sex and that is a violation of the law. *Furnco Construction Corporation v. Waters,* —— U.S. ——, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

■ The plaintiff was hired as an athletic administrator and coach. Her teaching role was incidental to the original purpose of her employment and, while the evidence is conflicting, my finding is that her position was not conditioned upon any agreement to advance toward a doctorate degree. That requirement came only after she had antagonized her superiors. The memoranda from Dr. Pettine in May and June of 1974 evidenced an intent to program her for failure. The unreasonableness of the requirements imposed upon her is apparent and the intent to formulate a pretext is obvious in the coerced agreement of June 10, 1974 with a threat of immediate non-renewal written into it. There was simply no legitimate non-discriminatory reason to require the plaintiff to rush toward a PhD degree. That degree was not reasonably related to the duties of the position for which she had been hired and which she was performing. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Not only was the plaintiff treated less favorably than other faculty members because of her position as a symbol of sexual equality, she was also the victim of a system which had a disparate impact on females. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The dual appointment system was used for males and it was not available for females. The athletic director was a paid full-time administrator who had no teaching responsibilities. The men who coached the football, basketball, track and field and other teams for male athletes were free from any pressure from the academic departments to obtain advanced degrees. Neither the plaintiff nor any other woman had such an opportunity to coach teams of either sex.

Counsel for CSU assert that the athletic programs for males and females were so different that the less favorable conditions of the plaintiff's employment were justified by the lack of comparability of the position of coaches and administrators in the two programs. They contend that there was no evidence of a difference between the treatment given to the plaintiff and any male coaches of women's athletic teams. That argument is reflective of the very kind of gender classifications and double standards which have been outlawed by Title VII. The defense has failed to introduce any evidence to support any claim of a necessity to limit the assignment of women's athletic administrators and coaches to a woman's program. Accepting the males-only limitation of the teams in the Athletic Department, there was nothing to prevent the assignment of Mary Alice Hill to duties in that department. The failure to even consider the possibility that women could be hired for the men's program was a serious limitation in the employment opportunity available to Mary Alice Hill and other women coaches and administrators.

■ The appropriate remedy for the discrimination against the plaintiff is to award

her an amount which she reasonably could have expected to receive for the academic year 1975–76. The evidence shows that a woman's athletic director position was created and the person appointed was paid a salary of $20,800.00. Accordingly, that is the amount of lost pay which should be awarded to the plaintiff in a judgment against Colorado State University.

The jury awarded an aggregate of $50,-000.00 in compensatory damages without being required to indicate any specific elements of loss. While it is inappropriate to attempt to speculate what was included in that amount, the addition of the back pay award to the verdict would be an excessive recovery. Accordingly, to the extent that payment is received by the plaintiff on the judgment to be entered against Colorado State University, such payment will be credited to the individual defendants, per capita, on the judgment against them on the jury verdict. The individual defendants have moved to alter or amend that judgment and for a new trial. To avoid confusion concerning the right to appeal, the determination of those motions and the entry of judgment on the findings and conclusions made herein will be delayed to provide plaintiff's counsel an opportunity to move for an award of attorney's fees.

Accordingly, it is ORDERED that the foregoing shall constitute the findings and conclusions on the Title VII claim against Colorado State University and the attorney for the plaintiff shall within twenty (20) days file a motion for an award of attorney's fees.